IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JUSTIN DELACRUZ,<br><br>Plaintiff,<br><br>vs.<br><br>CORECIVIC, INC., and DOES 1-20,<br><br>Defendants. | CV 26–20–H–DLC<br><br>ORDER |

Before the Court is Defendant CoreCivic, Inc.'s ("CoreCivic") motion to transfer venue pursuant to 28 U.S.C. § 1404(a), or in the alternative, motion to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 3.) For the reasons explained below, the motion is granted in part and denied in part.

## BACKGROUND[1]

At all times relevant to the Complaint, Plaintiff Justin Delacruz was a Montana Department of Corrections ("MDOC") inmate incarcerated at Saguaro

[1] Unless otherwise stated, all facts are derived from the Complaint (Doc. 1) and assumed true at this stage of the proceedings. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021)

Correctional Center ("SCC") in Eloy, Arizona. SCC is owned and operated by the Defendant, CoreCivic, Inc. ("CoreCivic").

On August 6, 2024, while housed at SCC under the legal custody of MDOC, Delacruz was assaulted for the first time by fellow MDOC inmate Coy Yarber while he was asleep. Yarber had a history of violence, assaults, and disciplinary infractions, and had previously threatened Delacruz and brandished a weapon. Although these incidents were known to CoreCivic staff, they nonetheless failed to separate Delacruz and Yarber or otherwise protect Delacruz prior to the assault, which resulted in a broken jaw, broken nose, orbital fractures, and facial trauma. Subsequently, despite these known "separation needs," Delacruz continued to encounter Yarber and, on or about December 9, 2024, Yarber entered Delacruz's cell armed with a razor. Yarber slashed Delacruz across the face and neck, causing massive blood loss, including a partially severed artery. CoreCivic staff allegedly failed to respond promptly, and Delacruz required emergency care including blood transfusions and surgical treatment. Delacruz suffered severe and permanent injuries, including PTSD, facial disfigurement, dental damage, shoulder injury, and cognitive impairment.

Delacruz filed this action against CoreCivic on March 23, 2026, alleging that CoreCivic failed to protect him from Yarber's violent attacks. Delacruz brings the following claims: (1) 42 U.S.C. § 1983; (2) entity liability under Section 1983; (3)

violation of the Montana Constitution; (4) negligence; and (5) punitive damages. CoreCivic seeks to transfer venue to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a), or in the alternative, moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint for failure to state a claim.

## DISCUSSION

### I. Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). Courts weigh multiple factors to determine whether transfer is appropriate in a particular case, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

"The burden is on the defendant to show that the convenience of parties and witnesses and the interest of justice require transfer to another district." *CFA N. Cal., Inc. v. CRT Partners LLP*, 378 F. Supp. 2d 1177, 1185 (N.D. Cal. 2005)

(internal citation omitted). "Indeed, 'it is clear that the burden is on the defendant seeking transfer under Section 1404(a) . . . . Without more, it is not enough that the defendant would prefer another forum, nor is it enough merely to show that the claim arose elsewhere. And, not surprisingly, transfer will not be ordered if the result is merely to shift the inconvenience of where the action is located from one party to another[.]" *Allstar Mktg. Grp. LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009) (citation omitted). CoreCivic argues that the *Jones* factors strongly favor transfer. The Court disagrees.

The first factor considers the location where the relevant agreements were executed and negotiated. Here, CoreCivic contends that the relevant correctional services agreement was negotiated and executed in Tennessee, CoreCivic's headquarters, and the intended place of performance was SCC in Penal County, Arizona. (Doc. 4 at 8.) However, because neither party has provided the Court with the contractual agreement, this factor weighs neither for nor against transfer.[2]

The second factor—the state most familiar with the governing law—disfavors transfer. Delacruz alleges claims that are rooted in both state and federal law, and although the District of Arizona is equally familiar with the legal

---

[2] The Court notes that even if it had received the contract and found this factor weighed in favor of transfer, that finding would not change its ultimate conclusion that transfer is not warranted.

standards applicable to Delacruz's federal claims, the District of Montana is almost certainly more familiar with Montana state law.

The third factor evaluates Delacruz's decision to file in the District of Montana. "[U]nder Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight in proceedings[], and courts generally will not transfer an action unless the 'convenience' and 'justice' factors strongly favor venue elsewhere." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000); *see also Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002). Relying on *Allstar Marketing Group*, 666 F. Supp. 2d at 1131, CoreCivic urges this Court to attribute "little weight" to Delacruz's choice in forum. (Doc. 4 at 9.) However, while some courts have indeed afforded less deference to a plaintiff's choice in forum outside his home state, *see Allstar Marketing Group*, 666 F. Supp. 2d at 1131, where the underlying case has little to no connection with the forum selected, *see Global Thermoforming Inc. v. Auto-Owners Ins.*, 2021 WL 65981, at *4 (D. Ariz. Jan. 7, 2021), or where plaintiff was clearly forum shopping, *see Williams v. Bowman*, 157 F. Supp. 2d 1103, 1116 (N.D. Cal. 2001), none of these scenarios are present here.

Rather, where, as here, the forum has meaningful connections to the dispute, the plaintiff's choice is entitled to deference. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Delacruz is a

citizen of the State of Montana (Doc. 1 ¶ 7), and although the assaults themselves did not occur in Montana, the State nonetheless has a sufficient connection with the underlying case. For example, Delacruz was a Montana prisoner in the legal custody of MDOC, and CoreCivic housed Delacruz pursuant to a contract to house Montana State prisoners. Additionally, there is no indication that Delacruz engaged in forum shopping. Therefore, there is a "strong presumption in favor of" Delacruz's choice to file this matter in the District of Montana. *Ravelo Monegro*, 211 F.3d at 513.

The fourth and fifth factors consider the parties' contacts with the forum and the contacts related to plaintiff's cause of action. CoreCivic argues that Delacruz and Yarber's residences constitute the only contacts with Montana; the remainder of the parties' contacts, CoreCivic maintains, are within the District of Arizona, including the underlying assaults and response by CoreCivic employees, as well as Delacruz's subsequent medical care. (Doc. 4 at 10–11.) CoreCivic concludes that "[r]equiring Arizona CoreCivic employees, all of whom are responsible for the management or operation of SCC, to travel to and from Montana to engage in this litigation would be unduly burdensome as it would require them to divert from their official duties and cause a potential disruption to the efficient operation of SCC." (*Id.* at 11.)

The location of the underlying injury, however, is not the only consideration. CoreCivic has deliberately entered into ongoing contractual relationships with the State of Montana and has assumed custodial authority over Montana prisoners, including Delacruz. Indeed, the challenged policies, classification decisions, custodial authority, and incarceration relationship all arise from Montana's delegation of incarceration authority over its prisoners to CoreCivic. These contacts are more than sufficient.

Delacruz further argues that the location of witnesses and documents favors transfer. However, while many witnesses and records are indeed located in Arizona, in the age of remote technology and technological advancement, CoreCivic's concerns regarding witness inconvenience and record location are simply not compelling. *See Florens Container*, 245 F. Supp. 2d at 1093 (generalized concerns regarding witness inconvenience insufficient). Witnesses may appear remotely[3] and, because documents now are generally produced electronically, their physical location is largely irrelevant. *See Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007) (observing that with technological advances in document storage and retrieval, transporting documents

[3] As counsel for the parties are well aware, this Court allows and encourages the parties to call witnesses from remote locations by video.

is generally not burdensome). This factor is therefore of diminished importance and weighs against transfer.

The sixth factor examines the cost of litigation. CoreCivic argues that costs to defend this lawsuit in Montana will be significant, particularly because it must transport and house employees in Montana and reimburse employees for lost wages. (Doc. 4 at 12.) This is unpersuasive. Delacruz is an incarcerated Montana resident whereas CoreCivic is a large national corrections corporation with presumably far greater resources. Transfer is inappropriate where, as CoreCivic seems to argue, it merely shifts the inconvenience from one side to another. *Decker Coal*, 805 F.2d at 843. The possibility of remote appearance may also reduce the cost of litigation, further obviating CoreCivic's concerns related to transportation and housing.

The seventh factor—the availability of compulsory process to compel attendance of unwilling non-party witnesses—also weighs against transfer. CoreCivic contends that the parties responsible for separating Delacruz and Yarber are essential witnesses but, because of their location, are beyond Montana's subpoena power. (Doc. 10 at 12) (citing Fed. R. Civ. P. 45(c)(1)(A)–(B)) (a subpoena could command them to attend a hearing, trial, or deposition only if they are employed, reside, or regularly transact business within 100 miles of the District of Montana or if attending trial would not cause them to incur substantial expense.)

However, a company such as CoreCivic may compel its employees to testify. *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1988) (citation omitted) (discounting inconvenience because defendant may compel employees to testify). Moreover, witnesses may also appear via deposition and video. This factor therefore weighs against transfer.

The eighth factor considers the ease of access to proof. This factor weighs against transfer for reasons also related to technological advancement; indeed, "[a]ccess to documents and other proof is less important in today's era of faxing, scanning, and emailing documents." *Metz v. U.S. Life Insurance Co.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009). CoreCivic's records, classification materials, incident reports, and discovery may all be electronically transmitted—the physical location of these documents, therefore, is of little concern.

The burden to justify transfer is substantial, and, on balance, the Court finds the above factors disfavor transferring this matter to the District of Arizona.

## III. Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted). At this stage, the plaintiff's allegations are assumed to be true and construed in his favor. *See Ariix*, 985 F.3d at 1114.

**A. Count I - 42 U.S.C. § 1983**

Delacruz brings a 42 U.S.C. § 1983 claim against CoreCivic alleging that he has a clearly established right to be protected from violence under the Eighth Amendment. (Doc. 1 ¶¶ 42–47.) CoreCivic argues that Section 1983 provides only a mechanism for enforcing individual rights secured elsewhere and does not create any substantive rights. (Doc. 4 at 16) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002)). CoreCivic further argues that, to the extent Delacruz brings an Eighth Amendment failure to protect claim, it must also fail. (*Id.*) The Court disagrees.

The Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A prison official violates the Eighth Amendment where the official is deliberately indifferent to a substantial risk of harm to an inmate. *Id.* at 834. "[T]here is both an objective and a subjective component to an actionable Eighth Amendment violation." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir.

2002). The objective prong requires exposure to a "substantial risk" that could result in "serious harm," *id.* at 834, whereas the subjective prong requires that the inmate establish the administrator both subjectively knew of and consciously disregarded a substantial risk of serious harm to the inmate's health or safety, *Farmer*, 511 U.S. at 837–38. An administrator or supervisor must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id*. at 837.

In the Court's view, Delacruz's Complaint unquestionably satisfies this standard. Delacruz alleges that inmate Yarber had a documented history of violence, assaults and disciplinary infractions, and that prior to the assaults, Yarber had threatened Delacruz, engaged in aggressive confrontations, and brandished a weapon. (Doc. 1 ¶¶ 21, 22.) Delacruz alleges these incidents "were known to CoreCivic staff," but, despite this knowledge, CoreCivic staff failed to separate Plaintiff and Yarber, knowingly housed Delacruz in proximity to Yarber, and allowed Yarber access to Delacruz's cell. (*Id.* ¶¶ 24–26.) Delacruz further alleges that he reported the first assault, which resulted in a broken jaw, broken nose, orbital fractures, and facial trauma, and requested protection. (*Id.* ¶¶ 27–30, 31–35.) However, despite Delacruz's requests, Yarber again violently assaulted Delacruz and caused life-threatening injuries. (*Id.* ¶¶ 36–40.) The Complaint therefore clearly alleges facts with respect to Yarber's known violent propensities,

prior threats, requests for protection, SCC employees' actual notice, and a failure to implement protection measures. Delacruz is not required to identify every individual involved in these allegations; that is precisely the purpose of discovery, and deliberate indifference may be established through circumstantial evidence and reasonable inference. *Farmer*, 511 U.S. at 842.

**B. Count II – Entity Liability**

A corporation acting under color of state law may be held liable under Section 1983 where the entity's policy, custom, practice, or deliberate indifference results in a constitutional violation. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139–40 (9th Cir. 2012); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–94 (1978). Absent a formal policy, a plaintiff may establish their *Monell* claim by:

> (1) [] showing a longstanding practice or custom which constitutes the standard procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policy-making authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and

constituency that the conduct has become a traditional method of carrying out policy." *Id.*

CoreCivic argues that Delacruz fails to establish a plausible inference that any policy, custom, or practice resulted in a violation of his constitutional rights. (Doc. 4 at 19.) The Court disagrees. Delacruz alleges that CoreCivic maintained unconstitutional policies, customs and practices, including (1) chronic understaffing, (2) failure to enforce separation and classification decisions, (3) failure to train staff regarding inmate safety, (4) failure to respond to known threats, (5) allowing dangerous inmates to move freely and access vulnerable inmates, and (6) prioritizing cost savings over inmate safety. (Doc. 1 ¶ 51.) Delacruz further alleges that these policies were implemented across CoreCivic facilities housing Montana prisoners, were connected to CoreCivic's contract with the State of Montana, and were the driving force behind the alleged constitutional violations. (*Id.* ¶¶ 52–56.)

A *Monell* claim need only contain sufficient factual allegations to plausibly suggest that a plaintiff is entitled to relief. *AE ex re. Hernandez v. County of Tulare*, 666 F.3d 631, 637–38 (9th Cir. 2012). As currently pled, Delacruz's allegations are more than sufficient to withstand Rule 8 scrutiny. CoreCivic seeks greater detail regarding prior incidents between CoreCivic staff and Delacruz, but more detailed evidentiary facts are simply not required at this stage of the

proceedings. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *AE ex rel. Hernandez*, 666 F.3d at 637 (plaintiff not required to identify all prior incidents or internal corporate records before discovery). Delacruz makes sufficiently detailed allegations that go beyond reciting the elements of a *Monell* claim; specifically, the Complaint alleges that he was attacked on two separate occasions while at SCC, the second of which occurred after requests for protection from SCC staff. (*See* Doc. 1 ¶¶ 31–34.) These allegations are neither "bald" nor "conclusory," and plausibly support an inference that systemic failures—not isolated negligence—caused Delacruz's injuries. *See Starr*, 652 F.3d at 1216.

### C. State Law Claims

#### i. Choice of Law

As a preliminary matter, the Court must determine whether Montana or Arizona law applies to Delacruz's state law claims. A federal court sitting in diversity or supplemental jurisdiction applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). For issues sounding in tort, Montana follows the Restatement (Second) of Conflict of Laws, § 145, and the "most significant relationship" test. *Phillips v. Gen. Motors Corp.*, 995 P.2d 1002, 1008 (Mont. 2000). The law of the place of injury is presumptively applicable unless "with respect to a particular issue, another state has a more significant relationship." *Id.*

"To determine which state has the most significant relationship," courts look to the following factors listed in § 145(2) of the Second Restatement:

> (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

*Buckles v. BH Flowtest, Inc.*, 476 P.3d 422, 423 (Mont. 2020). These factors "are to be evaluated according to their relative importance with respect to the particular issue," including the principles outlined in § 6:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the policies and interests of other interested states, (d) the protection of justified expectations, (e) the basic policies underlying the field of law, (f) certainty and predictability, and (g) ease in application. *Id.*; *Phillips*, 995 P.2d at 1008–1014.

*Id.* at 426. The factors "provide[] a more flexible approach which permits analysis of the policies and interests underlying the particular issue before the court, and [] that analysis under the Restatement approach is necessarily driven by the unique facts, issues, applicable law, and jurisdictions implicated in a particular case." *Id.* at 424–25. However, "certain § 6 factors are less important in tort law, such as the protection of justified expectations of the parties and certainty, predictability, and uniformity of result." *Goguen v. NYP Holdings, Inc.*, 544 P.3d 868, 880 (Mont. 2024).

Here, because the alleged injury itself occurred in Arizona, it is presumed that Arizona's substantive law will apply to Delacruz's state law claims. *See Buckles*, 476 P.3d at 425. The Court observes, however, that Delacruz was in Arizona involuntarily as an inmate of MDOC, and his relationship with CoreCivic was not formed in Arizona by mutual private dealings but by Montana's unilateral decision to delegate incarceration authority to CoreCivic. In other words, the negligence-based duties Delacruz invokes, such as classification, supervision, separation, housing, security, and protection, all arose from this custodial delegation.

Moreover, because the conduct that caused Delacruz's injuries occurred at SCC's facilities in Arizona, this factor would generally weigh in favor of Arizona law. The conduct causing Delacruz's injuries, however, includes more than just the physical assaults. Rather, Delacruz's alleged injuries also arose from systemic failures in inmate classification and separation, staffing, training, supervision, policy enforcement, and CoreCivic staff's response to known threats. These failures are connected to CoreCivic's contract with Montana and its assumed obligation to safely house Montana prisoners. As alleged, this matter is not a straightforward Arizona tort case, and the contacts tip this in favor of Montana.

The third factor considers the domicile or place of business of the parties. Here, CoreCivic is incorporated in Maryland and has its principal place of business

in Tennessee.[4] Delacruz is a citizen of the State of Montana and, at all times relevant to this action, both he and Yarber were inmates with the Montana DOC.[5] Montana certainly has an interest in protecting its prisoners and regulating the duties of private corporations performing the State's correctional functions. This factor therefore weighs in favor of Montana law. The final factor examines the place where the relationship between the parties is centered. Here, although the intended place of performance for Montana and SCC's correctional services agreement was Pinal County, Arizona, Delacruz's relationship with CoreCivic existed only because of Montana's correctional delegation. The relevant relationship, therefore, is the custodial relationship involving prisoners in

---

[4] In a footnote, CoreCivic argues that "the Court likely lacks personal jurisdiction over CoreCivic, as general jurisdiction does not exist in this case[]" and, as a result, the domicile factor weighs in favor of Arizona law. (Doc. 15 at 5 n.2.) However, as counsel for CoreCivic is certainly aware, personal jurisdiction may be general or specific in nature; the fact that *general* jurisdiction may not exist does not, in and of itself, foreclose the Court's personal jurisdiction over a defendant. *Lions Gate Entertainment Inc. v. TD Ameritrade Serv's Co*., *Inc.*, 170 F. Supp. 3d 1249, 1258 (C.D. Cal. 2016). That observation notwithstanding, the Court is satisfied that it has general personal jurisdiction over CoreCivic or, at the very least, specific personal jurisdiction. (*See* Doc. 1 ¶ 5.)

[5] "An inmate's forced relocation due to incarceration does not change his domicile to the state of incarceration, as the inmate lacks freedom to choose his residence and the forced nature of the relocation does little to evince an intent to make [the state of incarceration] his permanent home." *Z.B. v. Delta Air Lines, Inc.*, 2025 WL 540519, at *2 (C.D. Cal. Feb. 18, 2025).

Montana's legal custody. This factor further weighs in favor of applying Montana law.

As a result, the totality of the §145(2) factors show that application of Montana substantive law is appropriate.

The factors delineated in § 6(2) further support application of Montana substantive law to Delacruz's state-law claims. The first factor considers the needs of the interstate system. The "objectives of this factor are to make the interstate and international systems work well, to promote harmonious relations between states, and to facilitate commercial intercourse between them." *Buckles*, 476 P.3d at 426. Here, both Arizona and Montana have an interest in the matter before this Court: for Arizona, that interest is in an alleged assault occurring within its borders, whereas Montana's interest is rooted in the treatment of its prisoners. On balance, the Court finds that this factor tips slightly in favor of Montana. The Court is not persuaded that such a finding will deter CoreCivic from engaging in commerce in and with Montana; on the contrary, it reasonable to expect that a company conducting business with a state may be subjected to that state's laws.

The next two factors, the relevant policies of the forum and other interested states, "require[] [courts] to consider whether applying the law of a state with a relevant contact would further the purpose that law was designed to achieve." *Phillips*, 995 P.2d at 1009. As previously discussed, Montana has more significant

contacts with and relationships to the dispute. Moreover, as Delacruz observes, "Montana has a substantial sovereign interest in determining the scope of duties owed to Montana [inmates], the constitutional protections afforded to Montana inmates housed out of state, and the legality of policies implemented pursuant to Montana correctional contracts." (Doc. 10 at 8.) This factor therefore favors Montana law.

With respect to the fourth factor, "tort cases generally do not involve justified expectations. Particularly in the area of negligence, when parties act without giving thought to the legal consequences of their conduct or to the law to be applied, they have no justified expectations." *Phillips*, 995 at 1013. This factor is therefore neutral.

The fifth factor examines "the basic policies underlying the particular field of law." *Buckles*, 476 P.3d at 428. Comment h to § 6(2) states:

> This factor is of particular importance in situations where the policies of the interested states are largely the same, but where there are nevertheless minor differences between their local law rules. In such instances, there is good reason for the court to apply the local law of that state which will best achieve the basic policy, or policies, underlying the particular field of law involved."

*Buckles*, 476 P.3d at 427–28 (citing comment h, § 6(2)). The Montana Supreme Court has held that the relevant policies of the forum and other interested state "are

the most important factors" in a case where the plaintiff was injured outside of his domicile state. *Id.* at 427 (citing *Phillips*, 995 P.2d at 1009).

Here, both Arizona and Montana have an interest in deterring tortious conduct, whether that be conduct within their borders or involving their custodial inmates. However, Arizona and Montana tort laws differ in that Arizona follows a pure comparative fault model, *see* A.R.S. 12-2505, whereas Montana follows a comparative negligence model barring recovery if a plaintiff is more than 50% responsible for their injuries, Mont. Code Ann. § 27-1-702. CoreCivic argues that although both schemes seek to deter tortious conduct and compensate victims, this factor favors Arizona due to Arizona's recovery scheme; Delacruz does not raise any argument related to state policies. After consideration, the Court agrees that while Arizona's pure comparative fault model may further the interests of some tort plaintiffs, applying the law of Montana necessarily furthers the tort policies set forth by the State of Montana. This factor therefore tips slightly in favor of Montana.

The next factors, which pertain to certainty, predictability, and uniformity of result, are "less important in an area of law like torts where parties are less likely to give advanced thought to the legal consequences of their actions." *Goguen*, 544 P.3d at 882. Because it is highly unlikely that either Yarber or SCC employees

gave advance thought to the tort consequences of their action or inaction, this factor is irrelevant.

Finally, because the Court has previously determined that this matter should remain within the District of Montana, the last factor—ease in the determination and application of the law to be applied—favors Montana law. On balance, the Court concludes that the factors set forth in the §§ 6 and 145(2) of the Second Restatement favor application of Montana law to Delacruz's state law claims.

**ii. Negligence**

To maintain an action in negligence, a plaintiff must prove four essential elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted. *Florea v. Werner Enter., Inc.*, 681 F. Supp. 2d 1241, 1247 (D. Mont. 2010) (citation omitted).

Here, Delacruz alleges that CoreCivic was (1) subject to a duty of care; (2) breached the applicable standards of care, including negligent training, supervision, and discipline of employees, negligent enactment, enforcement and violation of policies and procedures, negligent violation of Delacruz's constitutional, statutory and common law rights, and negligent performance of official duties delegated to [CoreCivic] by the State of Montana; and (3) that CoreCivic's conduct caused severe physical and psychological injuries. (Doc. 1 ¶¶

67–70.) CoreCivic argues this claim should be dismissed because Delacruz fails to specifically identify any CoreCivic employees and because it contains only conclusory allegations. (Doc. 4 at 24.)

CoreCivic fails to appreciate the pleading standards at the motion to dismiss stage. To require Delacruz to provide specific evidentiary detail with respect to every individual employee and internal policy violation at this juncture—most notably, prior to discovery—would exceed federal pleading requirements. As pled, the Complaint provides sufficient factual allegations that, taken as true, create the plausible inference that CoreCivic breached its duty of care and caused harm to Delacruz.[6]

**iii. Violation of the Montana Constitution**

Montana has long recognized a cause of action for money damages for violations of the self-executing provisions of the Montana Constitution. *Dorwart v. Caraway*, 58 P.3d 128, 131 (Mont. 2002). However, the Montana Supreme Court has since clarified that the constitutional tort theory recognized in *Dorwart* is not

[6] CoreCivic also argues that, to the extent Delacruz attempts to bring a negligent training and supervision claim, this too fails. (Doc. 4 at 25.) Delacruz does not address this specific argument, and the Court does not read his Complaint as an attempt to bring such a claim, which is distinct from a claim for negligence. *See Whitcomb v. Innerchange Chrysalis, LLC*, 2024 WL 4544111, at 11 (D. Mont. 2024). In any event, to the extent Delacruz does intend to bring a negligent training and supervision claim, that is dismissed.

available where "adequate remedies exist under statutory or common law." *Sunburst School Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079, 1093 (Mont. 2007).

Relying on the Montana Supreme Court's decision in *Sunburst* and this Court's decision in *Seymour v. Contreraz*, 2023 WL 5846715 (D. Mont. Feb. 15, 2023), CoreCivic contends that if Delacruz has adequately pled a claim for negligence, then he has an adequate remedy under common law and his constitutional tort claim should be dismissed. (Docs. 4 at 26–27; 13 at 13.) In response, Delacruz argues that the Montana Supreme Court in *Dowart*, 58 P.3d 128, recognized a cause of action for violations of the self-executing provisions of the Montana Constitution over defense arguments that "already available common law tort remedies" provided an adequate remedy. Delacruz further argues that *Sunburst* is distinguishable because it delt with a jury instruction and not an alternative pleading, and *Seymour* is likewise distinguishable because it followed the Montana Supreme Court's decision in *Estate of Miller*, which did not evaluate a motion to dismiss. (Doc. 10 at 21–22.)

There are several issues with Delacruz's position, most notable of which is that it has already been argued before and rejected by both the Montana Supreme Court and the District of Montana.[7] First, in *Sunburst*, the Montana Supreme Court

[7] Counsel for Delacruz was the attorney of record for plaintiff in the District of Montana matter, *Seymour v. Contreraz.*

unambiguously clarified that the constitutional tort theory recognized in *Dorwart* is not available where "adequate remedies exist under statutory or common law." 165 P.3d at 1093; *see also Estate of Frazier*, 484 P.3d 912, 922 (Mont. 2021) (explaining that as clarified in *Sunburst*, "*Dorwart* established a constitutional tort based on the absence of any other adequate remedy at law"). Second, on a motion for summary judgment, the Montana Supreme Court in *Estate of Frazier* found the Estate's constitutional tort claims stemming from a wrongful shooting death by police offers were precluded because "the Estate's common law negligence claim provided an adequate remedy for any damages caused by [the officer's] alleged constitutional acts." 484 P.3d at 921.

Lastly, this Court in *Seymour* considered whether a plaintiff's negligence and constitutional tort claims were duplicative and subject to dismissal under the Montana Supreme Court's holding in *Estate of Frazier*. Notably here, although *Estate of Frazier* was in the context of summary judgment and *Seymour* a motion to dismiss, the Court nonetheless found the facts warranted the same result; specifically, this Court reasoned that the plaintiff "has not pled facts demonstrating that his common law claims [of assault and battery and negligence] will not adequately address any potential damages caused by the alleged constitutional violations." *Seymour*, 2023 WL 5846715, at *4. Notably, the Court did so over

plaintiff's objection that dismissal was premature until it could be "dispositively concluded" that tort remedies were adequate. *Id.* at *3.

Like *Seymour*, Delacruz has failed to make any showing as to what facts or allegations may demonstrate the inadequacy of his non-constitutional remedies. Indeed, Delacruz's common law claim for negligence and his constitutional tort claim are based upon the same alleged conduct. (*See* Doc. 1 ¶¶ 14–41.) Without more to distinguish the case at hand, the Court cannot ignore *Estate of Frazier's* clear holding that constitutional torts are unavailable where common law remedies exist, and *Seymour's* clear observation that dismissal of a plaintiff's constitutional tort claims at the motion to dismiss stage is not, in fact, premature. *See also Salminem v. Morrison & Frampton, PLLP*, 339 P.3d 602, 611 (Mont. 2014) (affirming Rule 12(b)(6) dismissal of the plaintiff's claim under the Montana Constitution, reasoning that any constitutional arguments could "be considered as part of their [common law tort] claim or any damages arising therefrom"); *Tally Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch, LLC*, 228 P.3d 1134, 1142 (Mont. 2010) (affirming Rule 12(b)(6) dismissal of constitutional tort claims because the plaintiffs "failed to demonstrate how common law or statutory remedies would not adequately address any potential damages"). Therefore, because adequate common law remedies exist, Count III will be dismissed.

**D. Does 1–20**

Although the use of Doe defendants in the Ninth Circuit is disfavored, the Circuit nonetheless permits Doe pleadings where the identities of responsible officials are unknown prior to discovery. *See Gillespie v. Civiletti*, 629 F.2d 637, 643 (9th Cir. 1980). That is precisely the case where, as here, the identities of CoreCivic personnel are currently within CoreCivic's possession. As urged by Delacruz, discovery—not dismissal—is the appropriate next step.

**E. Punitive Damages**

To recover punitive damages for a constitutional violation, a plaintiff must allege that: (1) the defendant's conduct was driven by evil motive or intent; or (2) the conduct at issue was recklessly or callously indifferent to the plaintiff's constitutional rights. *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993). Here, Delacruz alleges that CoreCivic "acted knowingly, deliberately, intentionally, and maliciously without regard for Plaintiff's rights, interests, and well-being," that "Defendants intentionally violated federal and state law and/or were precipitated by evil motive or intent," and that Defendants continued to expose him to Yarber even after the first violent assault. (Doc. 1 ¶¶ 73–79.) Delacruz's allegations with respect to his warnings, the first assault, CoreCivic's failure to separate the inmates, and a near-fatal second assault plausibly support a

request for punitive damages or, at the very least, create a factual question as to whether Defendants acted with reckless or callous indifference.

### F. Leave to Amend

The Ninth Circuit has held that leave to amend should be freely granted unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc). Here, because Delacruz fails to argue how additional facts would show that his common law claim is inadequate, the Court finds that amendment will be futile and will dismiss Count III with prejudice.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that CoreCivic's Motion (Doc. 3) is GRANTED in part and DENIED in part. The Motion is granted insofar as it seeks to dismiss Count III, and Count III of the Complaint (Doc. 1) is hereby dismissed. The Motion is denied in all other respects.

A preliminary pretrial conference shall be set by separate order.

DATED this 25th day of August, 2026.

Dana L. Christensen, District Judge
United States District Court